IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JACOB WILLIAM FETTE,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C11-2004

RULING ON JUDICIAL REVIEW

_____

**TABLE OF CONTENTS**

I.   *INTRODUCTION* ............................................. 2

II.  *PROCEDURAL BACKGROUND* ............................. 2

III. *PRINCIPLES OF REVIEW* ................................... 3

IV.  *FACTS* ....................................................... 4
     A.   *Fette's Educational and Employment Background* ............ 4
     B.   *Administrative Hearing Testimony* ...................... 5
          1.   *Fette's Testimony* ................................. 5
          2.   *Jay Fette's Testimony* ............................. 6
          3.   *Vocational Expert's Testimony* ..................... 7
     C.   *Fette's Medical History* ................................ 7

V.   *CONCLUSIONS OF LAW* ................................... 13
     A.   *ALJ's Disability Determination* ........................ 13
     B.   *Objections Raised By Claimant* ......................... 15
          1.   *Dr. Rohe's Opinions* .............................. 15
          2.   *Credibility Determination* ......................... 19
          3.   *Hypothetical Question* ............................ 23

VI.  *CONCLUSION* ............................................ 24

VII. *ORDER* .................................................... 24

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Jacob William Fette on February 8, 2011, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits. Fette asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits. In the alternative, Fette requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On November 24, 2006, Fette applied for SSI benefits. In his application, Fette alleged an inability to work since August 6, 2004 due to bilateral cerebral stroke. Fette's application was denied on February 19, 2007. On October 12, 2007, his application was denied on reconsideration. On December 12, 2007, Fette requested an administrative hearing before an Administrative Law Judge ("ALJ"). On June 10, 2009, Fette appeared via video conference with his attorney before ALJ Marilyn P. Hamilton for an administrative hearing. Fette, Fette's father, Jay Fette, and vocational expert Vanessa May testified at the hearing. In a decision dated July 27, 2009, the ALJ denied Fette's claim. The ALJ determined that Fette was not disabled and not entitled to SSI benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy. Fette appealed the ALJ's decision. On December 4, 2010, the Appeals Council denied Fette's request for review. Consequently, the ALJ's July 27, 2009 decision was adopted as the Commissioner's final decision.

On February 8, 2011, Fette filed this action for judicial review. The Commissioner filed an Answer on May 3, 2011. On June 16, 2011, Fette filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform other work that exists in significant numbers in the national economy. On August 11, 2011, the Commissioner filed a responsive brief arguing that

the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 22, 2011, Fette filed a reply brief. On March 16, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's

3

decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id*. (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id*. at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Fette's Educational and Employment Background

Fette was born in 1988. He is a high school graduate. At the administrative hearing, Fette testified that he had to take special education classes in the eleventh and

4

twelfth grades due to complications from several strokes he suffered at the end of ninth grade and beginning of tenth grade. At the time of the hearing, Fette also stated that he was studying landscaping and turf management at Kirkwood Community College. Additionally, Fette testified that he could speak and understand the English language, but he had some difficulty reading and writing because "I write slow, and my retention isn't there."[1]

Fette has a sparse employment history. He has no earning except for $625.00 in 2006, and $4,508.57 in 2008. His earnings in 2008 were from a paid internship required for his landscape and turf management studies at Kirkwood.

## B. Administrative Hearing Testimony

### 1. Fette's Testimony

At the administrative hearing, the ALJ asked Fette why he believed he was unable to perform any type of full-time employment. Fette responded "[m]y right hand, I can't lift anything over 50 pounds."[2] Next, the ALJ asked Fette to describe his functional abilities:

> Q: How long are you able to sit at one time?
> A: Just depends if I'm tired.
> Q: Well, in a usual day, how long are you able to sit before you absolutely have to get up?
> A: A half an hour to an hour.
> Q: How long are you able to stand at one time?
> A: I can stand pretty much the whole day.
> Q: How long are you able to walk at one time?
> A: Maybe an hour.
> Q: What's the heaviest thing that you lift and/or carry now using both hands?
> A: Maybe 30 pounds.
> Q: And what's the heaviest thing that you lift and/or carry using your left hand?

---

[1] *See* Administrative Record at 44.

[2] *See* Administrative Record at 49.

A:   50 pounds.
Q:   What's the heaviest thing you lift and/or carry using your right hand?
A:   20 pounds.

(Administrative Record at 49-50.)

### 2.   *Jay Fette's Testimony*

Fette's father, Jay Fette ("Jay"), also testified at the administrative hearing. Fette's attorney asked Jay what type of student Fette was before his stroke. Jay responded that Fette was "[v]ery involved academically. He was, I would say, always between 3.5-4.0 student, involved in sports, extracurricular activities, anything he could get a hold of."[3] Next, Fette's attorney inquired of Jay whether Fette needed special help in school following his stroke:

Q:   What kind of special help did [Fette] get in high school?
A:   He was in the care of area 267. He started out in a classroom by himself, one hour a day. Actually, I should start out -- area 267 actually sent a teacher to the house when he first started out. And that lasted for about an hour a day. And then he went -- back to high school, and he started there about an hour a day. And then he went, oh, I would say increased it -- slowly increased it until about three hours a day. But he was in a self-contained classroom. And that's how they did the rest of this high school academics.
Q:   Self-contained, you mean he was one on one with the teacher?
A:   He was one on one with the teacher.
Q:   Okay. And this was for his 11th and 12th grade years?
A:   This was 11th grade, and then most of 12th grade. The last quarter of his 12th grade, they did let him -- there was two classes a day where they let him [] into the classroom, but he always had a personal attendant. He always had an area 267 person with him.

---

[3] *See* Administrative Record at 57.

(Administrative Record at 58.) Lastly, Fette's attorney asked Jay whether he thought Fette could perform full-time competitive work. Jay answered that he did not believe that Fette could work a full-time job because Fette has difficulty understanding and recalling things and needs full-time supervision in a work-setting.

### 3.    *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who:

> can do light work[.] . . . The person should have a job where they don't have to use their voice but only occasionally. I'll further define that as no more than two hours total out of an eight-hour workday. And the person should not have to speak on the telephone as part of the work. There should be no driving required on the job. The person should have no hazards such as -- well, should avoid concentrated exposure to hazards -- let me put it that way -- such as moving machinery and unguarded heights. The person's able to do only simple, routine, repetitive work, no production rate pace work, nothing like a fast paced assembly line, but rather goal oriented work. No math calculations or a requirement to write instructions -- excuse me -- write reports on the job. And due to stress and problems with speech, there should be no contact with the public required as part of the job. I should say no interaction with the public. He can be in areas around the public, but not have to interact with the public as part of the job.

(Administrative Record at 64-65.) The vocational expert testified that under such limitations, Fette could perform the following work: (1) housekeeping cleaner (10,000 positions in Iowa and 800,000 positions in the nation), (2) laundry folder (800 positions in Iowa and 95,000 positions in the nation), and messenger (500 positions in Iowa and 75,000 positions in the nation).

## C.  Fette's Medical History

On May 6, 2004, Fette developed a severe headache and left-side weakness. He was taken to the emergency room where he was treated for a hemiplegic migraine. Fette

was sent home from the hospital, but continued to have some weakness on his left-side and slurred speech for about two weeks. On May 19, 2004, Fette was examined by Dr. Ronald H. Spiegel, M.D., at the University of Iowa Hospitals and Clinics ("UIHC"). Based on his examination and an MRI, Dr. Spiegel opined that Fette suffered a capsular stroke on May 6. Dr. Spiegel recommended further testing. Dr. Spiegel concluded that "[u]ntil these studies are done, I have suggested [Fette] refrain from sports. He may return to school."[4] Dr. Spiegel treated Fette with medication.

On August 6, 2004, Fette suffered a second stroke. He experienced right facial drooping, ride-side weakness in his arm and leg, and he became unable to speak. Fette was taken to the emergency room at Allen Memorial Hospital in Waterloo, Iowa, and later airlifted to UIHC. He remained at UIHC for two weeks. Upon discharge, his primary diagnosis was left middle cerebral artery infarction. He was also diagnosed with bilateral carotid artery dissections. A speech pathologist at UIHC also diagnosed Fette with severe apraxia, expressive aphasia, mild-moderate receptive aphasia, and dysphagia. The speech pathologist recommended swallow retraining, language retraining, and speech/voice retraining as treatment.

From August 31, 2004 to September 17, 2004, Fette received inpatient physical, occupational, speech language, and therapeutic recreation therapy at the Covenant Medical Center rehabilitation facility. On September 11, 2004, while in rehabilitation therapy, Fette met with Dr. Mary Ann Roberts, Ph.D., for a neuropsychological evaluation. Upon examination, Dr. Roberts found that Fette had "significant" difficulties with language, retrieving words/names, rote verbal memory, and reading comprehension and processing speed. He showed "significant" strength with spatial reasoning, picture memory, and perception of angles. Dr. Roberts also noted that Fette performed better with listening comprehension than reading comprehension. Academically, Dr. Roberts recommended

---

[4] *See* Administrative Record at 398.

a tutor and staying out of the classroom for 3 to 4 months when discharged from inpatient rehabilitation.

On November 23, 2004, Fette met with Dr. Suresh Kotagal, M.D., at the Mayo Clinic, for a neurological evaluation. Dr. Kotagal noted that Fette had been stable since his second stroke in August. In reviewing Fette's recent MRI and MRA, Dr. Kotagal opined that since Fette's "lesions are most likely consistent with spontaneous dissection, we should continue to observe the patient on anticoagulant therapy . . . [and] repeat head MRI scan and MRA in about three months."[5] Dr. Kotagal concluded that Fette should:

> continue to receive speech therapy on a regular basis as he is showing significant response to this therapy and he is at a critical time in terms of trying to recover from the effects of the stroke. . . . With regard to school times, I believe that he can start school on a half-day basis, from 10 a.m. to 2 p.m., but that he be in a self-contained classroom with individualized help. I believe that [Fette] is likely to experience long-term communication difficulties, and he is severely disabled from his neurologic handicaps.

(Administrative Record at 742.)

In March 2005, Fette was admitted to the Mayo Clinic for headaches and dizziness. He also showed difficulties with speech. Fette spent six days at the Mayo Clinic before being discharged with reduced speech slurring and improvement in his headaches. Doctors recommended medication and occupational therapy as treatment.

On July 22, 2005, Fette was referred to Dr. Joseph R. Duffy, Ph.D., for speech-language assessment. Upon examination, Dr. Duffy found that Fette had made "remarkable" progress in his speech and language since August 2004. Dr. Duffy noted moderate dysarthria and difficulties in language modalities. Dr. Duffy believed that "[f]urther improvement in [Fette's] speech can be expected," but continued speech therapy

---

[5] *See* Administrative Record at 742.

was necessary.[6] In December 2005, Dr. Duffy found that Fette had made "moderate" improvement with his motor/speech abilities since July 2005. Dr. Duffy also found mild-moderate dysarthria and continued language difficulties. Dr. Duffy recommended continued speech therapy as treatment.

On February 16, 2007, Dr. Richard Hornberger, M.D., reviewed Fette's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Fette. Dr. Hornberger determined that Fette could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Hornberger found no postural, manipulative, visual, or environmental limitations. Dr. Hornberger indicated that Fette had communicative limitations, but found his speech "adequate for the ordinary workplace."[7] Dr. Hornberger concluded that "[t]he total body of medical evidence indicates [Fette] is capable of functioning at a full light level."[8]

On December 28, 2007, Fette met with Dr. Kotagal for another neurological evaluation. Dr. Kotagal noted that Fette had been "gradually" recovering from two strokes in 2004. Dr. Kotagal also noted that there had been "no further stroke-like episodes over the past three years."[9] Dr. Kotagal found that Fette continued to have some speech difficulties which were more pronounced in stressful situations. Upon examination,

---

[6] *Id.* at 754-55.

[7] *See* Administrative Record at 781.

[8] *Id.* at 784.

[9] *Id.* at 893.

Dr. Kotagal opined that Fette "appears to have remained neurologically stable."[10] Fette returned to Dr. Kotagal for another evaluation in July 2008. Once again, Dr. Kotagal determined that Fette remained neurologically stable with mild expressive aphasia. In December 2008, Dr. Kotagal again found Fette to be neurologically stable. Dr. Kotagal opined that Fette's "language disorder is subtle, and for the most part [Fette] is able to communicate effectively with his peers."[11]

On January 9, 2009, Fette met with Dr. Alan J. Dale, M.D., for a neurological evaluation. Dr. Dale noted that Fette had not had a stroke-like episode since 2004. Dr. Dale found that Fette "continues to have some difficulties with language function. Reading is sometimes difficult, as is spelling. He has some difficulties with arithmetic. He is in a college that provides special education."[12] Dr. Dale concluded that from a clinical standpoint, Fette is "doing very well."

On February 9, 2009, Fette met with Dr. Jan H. Cerhan, Ph.D., for a psychological evaluation. Upon testing and examination, Dr. Cerhan determined that Fette had:

> impairments due to strokes sustained in 2004. The deficits are mostly or entirely referable to left hemisphere dysfunction. Deficits include ongoing mild aphasia, with impairment in word retrieval as well as a deficit relative to baseline in higher-level language processing (comprehension, expression, phonics). There is also slowing and difficulty with working memory (an aspect of concentration), particularly on tasks with language demands. There is clearly some residual right upper extremity impairment, although he does use it for writing. His memory retention appears to be normal. Problems with memory in daily life are probably referable to problems with comprehending and encoding verbally, and then retrieving words to demonstrate what he has learned later.

---

[10] *Id.* at 894.

[11] *Id.* at 890.

[12] *See* Administrative Record at 885.

(Administrative Record at 852.) Dr. Cerhan concluded that Fette "has experienced stroke-related decline in his functioning relative to high baseline. This will impact him vocationally, educationally, and socially."[13]

On February 10, 2009, Fette met with Dr. Daniel E. Rohe, Ph.D., for a comprehensive rehabilitation psychology consultation. Upon examination, Dr. Rohe diagnosed Fette with cognitive disorder and adjustment disorder with depressed mood. Dr. Rohe concluded that:

> Fette has had a phenomenal recovery from multiple strokes five years ago. Despite that, he has significant lingering morbidity which will make his ability to engage in competitive employment highly problematic. Although he rates himself as an 8 on a 1 to 10 scale of coping, he also notes that he cannot nearly work as fast as he had in the past, and it is doubtful that this individual could engage in competitive employment given his residual language, speed of information processing, and complex attention difficulties.

(Administrative Record at 855.) In July 2010, Fette met with Dr. Rohe for a vocational psychology assessment. Upon examination, Dr. Rohe determined that:

> [Fette's] vocational aptitudes are limited in particular because of [his] compromised psychomotor speed and coordination. He has greatest strength in his spatial aptitude and overall his perceptual abilities are stronger than his overall cognitive abilities. Test data suggests that he could not be employed at a competitive level given his current level of aptitudes. Vocational interests are squarely focused on things and data rather than people oriented occupations. Personality testing suggests moderate levels of underlying dysphoria and anger in an individual who does not tolerate stress well and struggles with aspects of conscientiousness and socialization.

(Administrative Record at 934.)

---

[13] *Id.* at 852.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Fette is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citation omitted). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v.*

*Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Fette had not engaged in substantial gainful activity since November 24, 2006. At the second step, the ALJ concluded from the medical evidence that Fette had the following severe combination of impairments: cerebral vasculopathy status post stroke with residual left hemiparesis and dysarthria, cognitive disorder not otherwise specified, depressive disorder not otherwise specified (adjustment related versus due to cerebrovascular event), and alcohol abuse. At the third step, the ALJ found that Fette did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Fette's RFC as follows:

> [Fette] has the residual functional capacity to perform light work . . . except that he requires a job where he does not use his voice but occasionally, defined no more than two hours out of an eight hour workday, with not speaking on the telephone. Additionally, the job should have no requirement to drive. [Fette] must avoid concentrated exposure to hazards, such as moving machinery and unprotected heights. He is able to do only simple routine repetitive work with no production-rate pacework, nothing like a fast-paced assembly line, but rather goal oriented work. The job must not require driving, math calculations, or written reports. Due to stress and problems with speech, the job should not require interaction with the general public.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Fette did not have any past relevant work. At the fifth step, the ALJ determined that based on his

age, education, previous work experience, and RFC, Fette could work at jobs that exist in significant numbers in the national economy. Specifically, the ALJ found that Fette could perform the following work: (1) housekeeping cleaner, (2) laundry folder, and (3) messenger. Therefore, the ALJ concluded that Fette was not disabled.

### B. Objections Raised By Claimant

Fette argues that the ALJ erred in three respects. First, Fette argues that the ALJ failed to properly consider the opinions of his treating doctor, Dr. Rohe. Second, Fette argues that the ALJ failed to properly evaluate his subjective allegations of disability. Lastly, Fette argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Dr. Rohe's Opinions

Fette argues that the ALJ failed to properly weigh the opinions of Dr. Rohe. Specifically, Fette argues that Dr. Rohe's opinions should be awarded significant weight because:

> As a rehabilitation psychologist, not only is Dr. Rohe an acceptable medical source and specialist, but he has 'particular expertise in the area of vocational counseling in the context of neuropsychological changes.' Dr. Rohe performed in depth aptitude testing on [Fette], which was specifically tailored to determining occupational success.

*See* Fette's Brief (docket number 12) at 20. Furthermore, Fette argues that additional evidence from Dr. Rohe, which he submitted to the Appeals Council after the ALJ's decision, supports his contention that the ALJ failed to properly weigh the opinion evidence of Dr. Rohe. Fette maintains that:

> When the results of the testing performed by Dr. Rohe in July 2010 were submitted to the appeals council, these results became part of the administrative record in this case. These results, which the Court is required to consider in its review, further strengthen [Fette's] claim and further undercut the decision of the ALJ.

*Id.* at 22. Contrary to Fette's assertions, the Commissioner argues that "[t]he ALJ properly discounted Dr. Rohe's opinion because it was inconsistent with the other evidence of record; it intruded on the Commissioner's prerogative to make the ultimate determination of disability; and it was internally inconsistent."[14]

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In considering the medical evidence of record, the ALJ properly considered and discussed Dr. Rohe's opinions.[15] In particular, the ALJ noted that Dr. Rohe:

> assessed a Global Assessment of Functioning (GAF) of 70/75. The GAF score is a clinician's rating of an individual's overall psychological, social and occupational functioning, on a scale of 0 to 100. A GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. A GAF score of 71 to 80 indicates, if symptoms are present, they are transient and expectable reactions to psychosocial stressors, no more than slight impairment in social, occupational, or school functioning. (See, American Psychiatric Association,

---

[14] *See* Commissioner's Brief (docket number 13) at 20-21.

[15] *See* Administrative Record at 20-21.

> *Diagnostic and Statistical Manual of Mental Disorders*, Fourth
> Edition, Text Revision p. 34, 2000).

(Administrative Record at 20-21.) In weighing the medical opinion evidence of record,

including Dr. Rohe's opinions, the ALJ determined that:

> The undersigned gives significant weight to the
> contemporaneous, longitudinal medical treatment records. As
> for opinion evidence, the undersigned notes two
> examining/treating mental health professionals have opined, at
> most, some mild symptoms or some difficulty in social,
> occupational, or school functioning, but generally functioning
> pretty well, has some meaningful interpersonal relationships.
> The undersigned gives significant weight to these assessments,
> based on comprehensive mental evaluations by trained mental
> health professionals. Although psychologist Dr. Rohe opined
> 'it is doubtful that this individual could engage in competitive
> employment given his residual language, speed of information
> processing, and complex attention difficulties,' the issue of
> whether [Fette] can engage in substantial gainful activity is
> reserved for the Commissioner. An opinion on that issue by
> a treating or examining medical provider can never be
> accorded controlling weight. The undersigned has given some
> weight to Dr. Rohe's opinion and has assigned quite restrictive
> functional limitations in the residual functional capacity above.

(Administrative Record at 23.)

Having reviewed the entire record, the Court finds that the ALJ properly considered

and weighed the opinion evidence provided by Dr. Rohe. The Court finds it significant

that the ALJ specifically stated that she gave Dr. Rohe's opinions "some" weight and

incorporated Dr. Rohe's opinions into her RFC assessment for Fette. While Fette focuses

primarily on the ALJ's failure to adopt or give significant weight to Dr. Rohe's opinion

that it is "doubtful" he could engage in competitive employment, the Court finds such a

focus misplaced because that type of opinion is not entitled to deference. *See House v.*

*Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant

is disabled or cannot be gainfully employed gets not deference because it invades the

province of the Commissioner to make the ultimate disability determination."); *see also*

*Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) (same). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

The Court will now address the issue of new opinion evidence from Dr. Rohe provided to the Appeals Council by Fette. In 2010, after the ALJ had rendered her decision, Dr. Rohe examined Fette a second time. Dr. Rohe's 2010 examination resulted in a similar assessment to his 2009 examination, including the opinion that Fette could not be gainfully employed. In its decision, the Appeals Council stated that it considered the additional evidence submitted by Fette, and found that it did not "provide a basis for changing the Administrative Law Judge's decision."[16]

In *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000), the Eighth Circuit Court of Appeals explained the effect of new evidence submitted to the Appeals Council for a reviewing court:

> The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). The newly submitted evidence thus becomes part of the 'administrative record,' even though the evidence was not originally included in the ALJ's record. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case. *See* 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new

---

[16] *See* Administrative Record at 1-2.

> evidence, supports the ALJ's determination. *See Nelson*, 966
> F.2d at 366.

*Id.*; *see also Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) (The final decision of the Commissioner should be affirmed if the decision "is supported by substantial evidence on the record as a whole, including the new evidence that was considered by the Appeals Council."); *Nelson*, 966 F.2d at 366 ("The newly submitted evidence is to become part of what we will loosely describe as the 'administrative record,' even though the evidence was not originally included in the ALJ's record. . . . If, as here, the Appeals council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision."). In *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994), the Eighth Circuit noted that a reviewing court:

> must speculate to some extent on how the administrative law
> judge would have weighed the newly submitted reports if they
> had been available for the original hearing. We consider this
> to be a peculiar task for a reviewing court.

*Id.*

In 2010, Dr. Rohe met with Fette for a follow-up examination to his 2009 examination. Dr. Rohe's findings and conclusions in 2010 were nearly identical to his findings and conclusion in 2009. The Court believes that the analysis applied by the ALJ to Dr. Rohe's 2009 opinions could equally be applied to Dr. Rohe's 2010 opinions. Therefore, having considered the entire record, including the new evidence that was submitted to the Appeals Council, the Court finds that the ALJ's decision with regard to the opinions of Dr. Rohe is supported by the record as a whole. *See Van Vickle*, 539 F.3d at 828;

### 2. *Credibility Determination*

Fette argues that the ALJ failed to properly evaluate his subjective allegations of disability. Fette maintains that the ALJ's credibility determination is not supported by

substantial evidence. The Commissioner argues that the ALJ properly considered Fette's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express

credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In addressing Fette's credibility, the ALJ made the following observations:

> [Fette] described activities of daily living that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [Fette] has no problems with personal care; he attends college and lives with three other roommates while at school; he prepares his own meals; he drives to the grocery store; he socializes with peers to include playing cards and drinking alcohol.

> [Fette] testified that he worked while in school as part of an internship, earning $4,508.00. Although that work activity occurred after the alleged onset date and did not constitute disqualifying substantial gainful activity, it does indicate that [Fette] is capable of doing some level of work-like activities 8 hours a day, 5 days a week.

> Although [Fette] has received various forms of treatment for his symptoms, which [] weighs somewhat in [his] favor, the record also reveals that the treatment has been generally successful in alleviating those symptoms. Since [Fette's] strokes in 2004 and 2006, [Fette] has graduated high school and attended college. Clinical notes revealed [his] 'language

disorder is subtle and for the most part the claimant is able to communicate effectively with his peers.' In addition, clinical notes indicated 'the claimant attends college; he does have a mentor due to his learning disabilities secondary to stroke, but he is doing well. The claimant received a scholarship and is living with three roommates at college.' It is noteworthy that [Fette] presented well at the hearing, consistent with treatment notes indicating he is able to be understood in ordinary conversation.

(Administrative Record at 22.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Fette's treatment history, medical history, functional restrictions, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Fette's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Fette's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3.   Hypothetical Question

Fette argues that the ALJ's hypothetical question to the vocational expert was insufficient to account for his deficiencies in concentration, persistence, and pace.[17] Fette maintains that this matter should be remanded so that the ALJ may ask a proper hypothetical question to the vocational expert.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Fette's testimony in determining

---

[17] Fette also argues that remand is necessary because "the vocational expert stated at the conclusion of the Hearing that her understanding of the term 'supported employment' was not based on the Dictionary of Occupational Titles (the "DOT"), but rather, predicated on her professional experience. However, Ms. May never explained how she defined the term 'supported employment,' and she never provided a clear answer to Mr. Field's first hypothetical question." *See* Fette's Brief and Argument (docket number 12) at 28. This argument wholly devoid of merit. While the vocational expert stated that term the "supported employment" is not defined in the DOT, the ALJ had *Fette's attorney* define the term at the hearing, which he did as "constant supervision." *See* Administrative Record at 66-67. The vocational expert then *answered* Fette's attorney's question and indicated that an individual who needed constant supervision in the workplace could not find competitive employment. *See* Administrative Record at 67-69. The Court will not further address this meritless argument.

Fette's impairments.[18]   The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole.  Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole.  *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible).  Therefore, the ALJ's hypothetical question was not insufficient.

## VI. CONCLUSION

The Court finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Rohe.  The ALJ also properly determined Fette's credibility with regard to his subjective complaints of disability.  Lastly, the ALJ's hypothetical questions to the vocational expert properly included those impairments which were substantially supported by the record as a whole.  Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this  _12th_  day of December, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

[18] *See* Administrative Record at 19-23.